**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAREECE ANTHONY GIPSON,

                Petitioner,                        Case Number: 2:14-CV-10552

v.                                       HONORABLE PAUL D. BORMAN
                                       UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

                Respondent.

_____/

## OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This is a habeas case filed under 28 U.S.C. § 2254.  Petitioner Lareece Anthony Gipson (Petitioner) is a state inmate currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan.  He challenges his convictions for  assault with intent to rob while armed (AWIRA), Mich. Comp. Laws § 750.89, and aggravated stalking, Mich Comp. Laws § 750.411i, on the ground that the evidence presented was insufficient to support his convictions.  For the reasons which follow, the petition will be denied and the matter dismissed.

### I.  Facts

Petitioner's convictions arise from an incident with Sheila Sowards in the City of Inkster on January 7, 2010.  The Court adopts the following excerpt from Petitioner's statement of facts, which is consistent with the facts discussed in the Michigan Court of Appeals' opinion:

[Sheila Sowards] was employed at Head Start on Walnut in Inkster, Michigan. . .. She knew Lareece Gipson and identified him for the record. (T. vol. I, 5/9/11, 7-9). She met him when he came to fill out an employment application, shortly after they moved to that location, about three years ago. The HR department did not hire him due to a felony. She saw him several times after that, outside the building. He would ask her out on dates, ask for money, cigarettes, or to use the phone, the internet or the bathroom. She did not encourage him, she told him that she was engaged. . .

On January 7, 2010, [Sowards] was leaving work after 4:00 p.m., got into her 4 door vehicle, with her purse, and drove to the stop sign at Walnut and Carlysle. Lareece was standing at the stop sign, by the driver's side. He opened the passenger door and got in the front seat. This made her very nervous. She asked what he was doing and they had a conversation. He wanted her to take him with her. He made sexual comments and she told him to get out. He was in the car about 10-15 minutes. (T. vol. I, 12-16).

Lareece was trying to kiss her, and pinned her arms down so she could not push him away. . . . He ran his hands up her inner thigh. . . . He touched her on the outside of her clothing. She pried his hands off her with her hands. He tried to pick up her purse but it was attached for the seat belt. He became angry. (T. vol. I, 17-19). Lareece said he needed a couple of bucks and asked her for it. She told him she had no money, and to get out. He put his hand in his pocket and pointed it at her. She thought he had a gun. He had his black winter jacket on, she could not see his hand. She was terrified he had a gun in his pocket. (T. vol. 1, 19-20).

She put her hands in her pockets and was pushing buttons on her phone. She . . . called TJ, her co-worker Thomas Stewart. She yelled, "He's in my truck." . . . Lareece was trying to unlatch her purse, and TJ was threatening, yelling call the police, "I'm on my way." She told TJ Lareece was in her truck. Lareece jumped out, and she drove away.

. . . . [Sowards] made a police report the next week when she found out he had done the same thing to four [others]. Two police officers came to Head Start on January 11. They were familiar with Lareece and told her to get a PPO, [which she did].

Pet. Br. at 1-3.

## II. Procedural History

2

Petitioner was convicted by a judge in Wayne County Circuit Court of assault with intent to rob while armed, fourth-degree criminal sexual conduct, and aggravated stalking. On May 27, 2011, he was sentenced to 10 to 25 years' imprisonment for the assault with intent to rob while armed conviction, 1 to 2 years' imprisonment for the fourth-degree criminal sexual conduct conviction, and 2 to 5 years' imprisonment for the aggravated stalking conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals arguing that insufficient evidence was presented to support his convictions for assault with intent to rob while armed and aggravated stalking and that the convictions were against the great weight of the evidence.  The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Gipson*, No. 305156, 2013 WL 331551 (Mich. Ct. App. Jan. 29, 2013).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal.  *People v. Gipson*, 494 Mich. 882 (Mich. July 30, 2013).

Petitioner then filed the pending habeas petition.  He raises the same claim raised on direct review in state court, that is, that insufficient evidence was presented to sustain his convictions for assault with intent to rob while armed and aggravated stalking.

3

## III.  Standard

### A.

Upon the filing of a habeas corpus petition, the Court must promptly examine the petition to determine "if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief."  Rule 4, Rules Governing Section 2254 cases.  If the Court determines that the petitioner is not entitled to relief, the Court shall summarily dismiss the petition.  *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face").  The habeas petition does not present grounds which may establish the violation of a federal constitutional right, therefore, the petition will be dismissed.

### B.

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

4

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

5

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) *(*citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.  Discussion

Petitioner seeks habeas relief on the ground that his convictions were not

supported with sufficient evidence. Specifically, he argues no evidence was presented to show that he had a weapon or that he had the specific intent to rob Sowards. He also argues that insufficient evidence was presented to sustain his conviction for aggravated stalking because the prosecutor failed to show he engaged in a course of conduct as defined in the statute and that a phone call he made to Sowards' place of employment was not "unconsented contact" under the statute.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

7

reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, — U.S. —, 132 S. Ct. 2060, 2065 (2012).

Under Michigan law, the essential elements of assault with intent to rob while armed, are: "'(1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed.'" *People v. Akins*, 259 Mich. App 545, 554; 675 N.W.2d 863 (Mich. Ct. App. 2003), *quoting People v. Cotton*, 191 Mich. App 377, 391; 478 N.W.2d 681 (Mich. Ct. App. 1991). The statute does not require the perpetrator to actually be armed with a dangerous weapon. It specifically provides that the person be "armed with a dangerous weapon, *or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon*[.]" Mich. Comp. Laws §750.89 (emphasis added).

The Michigan Court of Appeals found sufficient evidence to establish each element of assault with intent to rob while armed, holding, in relevant part:

> [T]he evidence showed that defendant "put his [left] hand in his pocket and pointed" his pocket at the victim. Defendant then stated, "I need a couple of bucks. Give me a couple of bucks. I need money." The victim denied seeing a weapon, but testified that "[t]he way the pocket was pointed, I thought he had a gun. It was pointy." Defendant then proceeded to try,

unsuccessfully, to take the victim's purse. The trial court explicitly credited the victim's testimony and discredited defendant's opposing testimony. Questions of witness credibility and the weight of the evidence are reserved for the fact finder, in this case, the trial court. *Harrison*, 283 Mich. App at 378.

The facts in this case resemble those of *People v. Taylor*, 245 Mich. App 293; 628 NW2d 55 (2001), wherein this Court found that the victim's testimony was sufficient to establish the use of a weapon or feigned weapon. In *Taylor*, the defendant combined the threatening words, "This is a stick up," with a gesture inside his jacket. *Id.* at 296, 302–303. Turning to the present case, defendant's request for money while pointing his pocket at the victim established a threat and was sufficient to establish beyond a reasonable doubt that defendant was "armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon" within the meaning of M.C.L. 750.89.

Defendant next argues that the evidence presented was insufficient to prove the requisite specific intent because his actions were governed by his mental illness. AWIRA is a specific-intent crime that requires evidence of the defendant's intent to rob or steal. *Akins*, 259 Mich. App at 554. The specific intent to rob or steal "may be inferred from the surrounding facts." *People v. Harris*, 110 Mich.App 636, 641; 313 NW2d 354 (1981). As noted previously, the victim testified that defendant asked for money while pointing his pocket at the victim and also attempted to take her purse; the trial court found the victim's testimony credible. No evidence was presented at trial regarding defendant's mental illness. We conclude that there was sufficient evidence to prove beyond a reasonable doubt that defendant possessed the requisite intent.

*Gipson*, 2013 WL 331551, at *1-2.

Petitioner argues that the state court's application of *Jackson* is unreasonable because if he had intended to rob the victim, he would have: shown her his weapon, acted aggressively toward her, and verbally threatened her. These arguments are meritless.

First, as discussed, under Michigan law, a perpetrator need not actually possess a weapon

9

to be found guilty of assault with intent to rob while armed.  When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall*, 459 U.S. at 434.  The trial court found Sowards' testimony that she believed Petitioner had a weapon in his pocket credible. Second, Sowards' testimony that Petitioner asked her for money, touched her inappropriately, and attempted to take her purse could lead a reasonable trier of fact to conclude that Petitioner assaulted her and intended to take her money.  Therefore, the state court of appeals was not unreasonable in concluding that the evidence sufficiently supported Petitioner's conviction of assault with intent to rob while armed.

Petitioner also argues that the evidence was insufficient to support his conviction for aggravated stalking.  The Michigan Court of Appeals set forth the elements for aggravated stalking as follows:

> "Aggravated stalking consists of the crime of 'stalking,' ... and the presence of an aggravating circumstance...."  *People v. Threatt*, 254 Mich. App 504, 505; 657 NW2d 819 (2002).  "Stalking" is a "willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." M.C.L. 750.411h(1)(d); M.C.L. 750.411i(1)(e); *see also People v. Kieronski*, 214 Mich. App 222, 229, 233–234; 542 NW2d 339 (1995).  A "[c]ourse of conduct" is "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." M.C.L. 750.411i(1)(a).

> Conduct constitutes "[h]arassment" if the conduct is "directed toward a victim [and] includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional

distress." M.C.L. 750.411i(1)(d). M.C.L. 750 .411i(1)(f) defines "[u]nconsented contact" as "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." M.C.L. 750.411i(1)(f) lists several actions that constitute "[u]nconsented contact," but explicitly notes that "[u]nconsented contact" "is not limited to" the enumerated actions. "Contacting th[e] individual by telephone" is one of the enumerated actions. M.C.L. 750 .411i(1)(f)(v).

M.C.L. 750.411i(2) lists the aggravating circumstances that establish aggravated stalking. One of these aggravating circumstance requires that "[a]t least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction." M.C.L. 750.411i(2)(a).

*Gipson*, 2013 WL 331551, at *2-3.

Petitioner argues that the prosecution failed to establish that there were two or more acts that constituted a pattern of conduct under the statute and that his phone call to Sowards' place of employment was not "unconsented contact" under the statute. The Michigan Court of Appeals undertook a comprehensive and thorough analysis of Petitioner's claim and held sufficient evidence was presented to sustain Petitioner's aggravated stalking conviction:

There was sufficient evidence to establish at least two separate acts that constituted a pattern of conduct with a continuity of purpose. First, the victim testified that on January 7, 2010, defendant entered her vehicle uninvited, tried to kiss her, made sexual comments to her, and ran his hand up her thigh. At trial, defendant admitted that a PPO was issued as a result of this incident in mid-January 2010. Second, a Head Start employee spotted someone he believed to be defendant on Head Start property on January 20, 2010. Third, defendant called the private, unlisted phone number at the Head Start daycare after the PPO was served on him. The PPO prohibited defendant from calling this number. Defendant called and asked if Head Start was hiring. Defendant claims he mistakenly called this

11

number when he pressed buttons on his phone; however, during his testimony at trial, defendant claimed he did not know how he received the phone number.  Based on this evidence, it is logical to infer that defendant received the phone number from the PPO order.

The trial court identified defendant's contact with the victim on January 7, 2010, the subsequent telephone call to her place of employment, and the testimony concerning defendant's presence at the victim's place of employment on January 20, 2010, as the acts constituting stalking. The trial court found the testimony of the victim, employees of Head Start, and the police to be credible.

This constituted sufficient evidence to establish a pattern of conduct in violation of the stalking statute.  Even if defendant's presence on Head Start property on January 20, 2010, was not for the purpose of harassing the victim (defendant lived nearby and was frequently outside), this act was not essential to proving stalking because only two acts are required and it was reasonable for the trial court to infer that defendant's purpose in calling the Head Start center was to "haras[s]" the victim within the meaning of M.C.L. 750.411h(1)(c) and M.C.L. 750.411i(1)(d).  These acts, taken together, constituted a pattern of conduct with a continuity of purpose, namely to harass the victim.  Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence from which the trial court could have found beyond a reasonable doubt that defendant engaged in at least two acts, constituting a pattern of conduct, for the purpose of harassing the victim.

Defendant argues that his phone call to the Head Start center did not constitute "[c]ontacting th[e] victim by telephone" pursuant to M.C.L. 750.411i(1)(f)( v ) because the victim did not answer the phone.  Contrary to defendant's argument, M.C.L. 750.411i(1)(f) does not provide an exhaustive list of actions that constitute unconsented contact.  The language of the statute explicitly states that "[u]nconsented contact ... includes, but is not limited to" the enumerated actions.  M.C.L. 750.411i(1)(f).  Because defendant's act of calling the victim at her workplace is similar in nature and fits logically with the other actions set forth in M.C.L. 750.411i(1)(f)(i)-( vii ), we cannot conclude that the trial court erred by determining that the telephone call constituted an act of "[u]nconsented contact" under M.C.L. 750.411i(1)(f).

We conclude that there was sufficient evidence presented at trial from

12

which the trial court could have concluded beyond a reasonable doubt that
defendant committed aggravated stalking.  M.C.L. 750.411i(1) and (2)(a).

*Gipson*, 2013 WL 331551, at *3-4.

As the Michigan Court of Appeals recognized, ample evidence was presented to
support all elements of the aggravated stalking charge.  Petitioner's argument that he
called Sowards' place of employment by accident is unavailing, as the fact-finder was
charged with the responsibility for resolving evidentiary disputes and determining
credibility, and it resolved those disputes against Petitioner.  *See Jackson*, 443 U.S. at
319.  This Court must defer to the fact-finder's determination of the facts.  *Id.*  "A
reviewing court does not reweigh the evidence or redetermine the credibility of the
witnesses whose demeanor has been observed by the trial court."  *Matthews v.
Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S.
422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports
conflicting inferences must presume – even if it does not affirmatively appear in the
record – that the trier of fact resolved any such conflicts in favor of the prosecution, and
must defer to that resolution.'"  *McDaniel v. Brown*, 558 U.S. 120, 133 (2010), (quoting
*Jackson*, 443 U.S. at 326).  The decision of the Michigan Court of Appeals easily passes
scrutiny under the deferential AEDPA standard, as the appellate court applied the correct
constitutional test, relied on facts amply supported in the record, and did not unreasonably
apply clearly established constitutional law.

Finally, to the extent Petitioner also is raising a claim that the verdict was against

13

the great weight of the evidence, this claim is meritless.  In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result."  *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted).  The grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude."  *Id.* at 634 n. 8.  Thus, a claim that a verdict is against the great weight of the evidence alleges an error of state law, which is not cognizable on habeas review.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be

14

granted.  Therefore, the Court will deny a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus and a certificate

of appealability are DENIED.

SO ORDERED.


s/Paul D. Borman                            
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 2, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each
attorney or party of record herein by electronic means or first class U.S. mail on April 2,
2014.


s/Deborah Tofil                            
Case Manager

15